# Big Spring Electric Co. *v.* Kitzmiller et al., Appellants.

*Corporations—Issue of bonds—Fraud—Practice, C. P.—Pleadings—Charge of court—Failure to ask for instructions—Illegal transaction—Evidence—Burden—Receipt—Fraud, etc.—Theory of case—Defense—Constitution, art. XVI, sec. 7—Act of April 17, 1876, P. L. 32.*

1. Under article XVI, sec. 7 of the Constitution of 1874 and the Act of April 17, 1876, P. L. 32, which provide that no corporation shall issue bonds except for money or property actually received, a sale and purchase of bonds must be bona fide, and not a mere device to evade the law, and to impose upon the corporation a greater obligation than there is occasion for it to assume.

2. Where in an action by a corporation to recover a balance alleged to be due for bonds sold to defendants, where the pleadings show a prima facie case for plaintiff, and defendants first set up payment by a transfer of land which raised the question of sufficiency of the consideration for the bonds issued, defendants cannot complain that the case was tried on a theory advanced by themselves.

3. In such action, where the minutes of the corporation show that the sale was carried out as a cash transaction, and proof is produced that no payment was in fact made, a prima facie case is established.

4. Where a party can make out a case, without the aid of an illegal transaction, he may be permitted to recover.

5. Where, in an action by a corporation to recover for a balance alleged to be due for bonds of the company sold and delivered to defendants, the latter rely on a treasurer's receipt in full, and plaintiff sustains the burden imposed upon it by the court of showing that the statements in the receipt were not correct, defendants cannot complain that the court failed to instruct the jury that the receipt could only be set aside for fraud, accident or mistake; and especially is this the case where the trial judge at the end of the charge asked if any omissions or mistakes had been made by him, and counsel for defendants made no request for further instructions as to the effect of the receipt.

Argued April 26, 1920. Appeal, No. 286, Jan. T., 1920, by defendants, from judgment of C. P. Cumberland Co., Feb. T., 1919, No. 121, on verdict for plaintiff in case of Big Spring Electric Co. v. S. M. Kitzmiller and E. J. Kitzmiller, trading as S. M. Kitzmiller & Bro. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Assumpsit to recover balance alleged to be due for bonds sold and delivered. Before McPHERSON, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $50,540.25. Defendants appealed.

*Errors assigned* were instructions, quoting them.

*John R. Geyer,* with him *J. Harvey Line, J. W. Wetzel* and *John E. Fox,* for appellant.—The act of the corporation in issuing its bonds in violation of the act is illegal, and, if so, it cannot recover on that ground. It becomes the duty of the court so soon as the illegality of the transaction appears, whether from plaintiff's case or from defendant's testimony, to deny a recovery: Fowler v. Scully, 72 Pa. 456; Shellenberger v. Altoona & P. C. R. R., 212 Pa. 413; American Tube & Iron Co. v. Baden Gas Co., 165 Pa. 489; Com. ex rel. v. Reading Traction Co., 204 Pa. 151; Guaranty T. & T. Co. v. Dil-

worth Coal Co., 235 Pa. 594; Memphis, etc., R. R. v. Dow, 120 U. S. 287.

A receipt in full is prima facie but not conclusive evidence of the settlement, but it may be attacked on the ground of fraud, mistake, or ignorance of the legal rights of the party who gave it: Penn Furniture Co. v. Lumbermen's Mut. T. Ins. Co., 47 Pa. Superior Ct. 77; Moore v. Robison, 47 Pa. Superior Ct. 72; Gregory v. Huslander, 227 Pa. 607; McGahren v. Ins. Co., 28 Pa. Superior Ct. 47; Guhl v. Frank, 22 Pa. Superior Ct. 531; Rhoad's Est., 189 Pa. 460; Ogden v. Phila. & West Chester Traction Co., 202 Pa. 480; Muldowney v. Tualin, 38 Pa. C. C. R. 49; McDonald v. Piper, 193 Pa. 312; Crawford v. Forest Oil Co., 189 Pa. 415.

*E. M. Biddle, Jr.,* with him *Brinton & Vale,* for appellee.—The constitutional prohibition is a bar to defense, not to claim of plaintiff: Fowler v. Scully, 72 Pa. 456; Bedford R. R. v. Bowser, 48 Pa. 29; Memphis, etc., R. R. v. Dow, 120 U. S. 287; Cheetham v. McCormick, 178 Pa. 186.

Protection against fraud was intended for future as well as present creditors: Memphis, etc., R. R. v. Dow, 120 U. S. 287; Rice's App., 79 Pa. 168; Rhawn v. Edge Hill Furnace Co., 201 Pa. 637; Monongahela Bridge Co. v. P. & B. Traction Co., 196 Pa. 25.

Receipts were not conclusive under circumstances shown by evidence.

OPINION BY MR. JUSTICE FRAZER, June 26, 1920:

Plaintiff sued to recover the balance of the purchase price of $50,000 of corporate bonds of plaintiff company sold to defendants under an alleged agreement, whereby defendants were to pay par for the first $20,000 and ninety cents on the dollar for the next $30,000. Plaintiff's statement acknowledged payments on account to the extent of $4,090.48, including an item of $1,000 for a tract of land purchased from one Daniel Heller. The

affidavit of defense denied the first $20,000 of bonds were to be paid for in cash at par and averred plaintiff agreed to deliver bonds to that amount in exchange for the Heller land, and as to the remaining $30,000 the affidavit averred payments made on account at various times, as set forth in an annexed memorandum. At the trial defendants further relied upon the effect of the receipt in full given by the treasurer of plaintiff company, in connection with a general statement submitted therewith and also a notation on a check signed by defendants to the effect that it was "in full payment balance due" plaintiff on account of the land in question. The trial resulted in a verdict for plaintiff for the full amount claimed and defendants appealed, alleging error in various parts of the charge.

Defendants, after negotiating for the purchase of the entire capital stock of the Big Spring Electric Company, agreed to purchase the stock of the company on condition Daniel Heller, a stockholder and one of the directors, would sell to defendants the tract of land referred to above for the sum of $1,000; it being further agreed that the electric company, upon the consummation of such sale, should immediately purchase the property from defendants for the sum of $20,000, to be paid in bonds to be issued by the electric company. Pursuant to this agreement the existing officers and directors of the electric company presented their resignations to take effect at the pleasure of defendants, in the meantime continuing to act and agreeing to sign any and all necessary papers and take whatever corporate action defendants might desire or deem requisite "in giving [defendants] $20,000 bonds for Heller's land." On December 28, 1912, in accordance with their agreement, a meeting of the stockholders of the electric company was held and a motion duly passed by which the company agreed to pay defendants $20,000 in cash "for said Heller tract," the minutes reciting that the deed for this tract was "then turned over to company and check given in pay-

ment for $20,000 cash consideration." The minutes also showed defendants purchased bonds of the company to the amount of $20,000 at par, and gave the company their check for that amount. The stockholders' meeting appears to have been carried through in this manner for the purpose of concealing the fact that the company was paying $20,000 for a tract of land defendants bought for $1,000.

The first question for consideration is whether the transaction was void within the meaning of article XVI, section 7, of the Constitution of Pennsylvania and the Act of April 17, 1876, P. L. 32, which provide that no corporation shall issue stock or bonds except for money or property actually received and that all fictitious increase of stock or indebtedness shall be void. The trial judge left to the jury the question whether the value of the land was a fair equivalent for the bonds and correctly charged that if there was a fictitious increase of the indebtedness there would be due from defendants to plaintiff the difference between the fair value of the land at the time of conveyance and the par value of the bonds; but, if the value of the land approximately conformed to the amount of bonds issued for the property, they should find for defendants. The record contains ample evidence to support the conclusion of the jury that the value placed on the land was a fictitious one. The constitutional and statutory provisions referred to were designed to prevent unscrupulous persons from fraudulently issuing and placing on the market bonds or stock not fairly representing money or property received by the corporation: Memphis, etc., R. R. v. Dow, 120 U. S. 287; Guarantee Title & Trust Co. v. Dilworth Coal Co., 235 Pa. 594. In purchasing property for corporate purposes the transaction must be bona fide and not a mere device to evade the law and to impose upon the corporation a greater obligation than there is occasion for it to assume. There was in the present case such a disproportion between the value of the property and amount

paid as consideration for it as to require the jury to pass on the question whether the transaction was bona fide or a mere device to evade the law.

We find no merit in the contention that the good faith of the transaction was not properly raised in the pleadings. Plaintiff declared on an express contract and for the purchase price of bonds sold and delivered, and relied upon the minutes of the stockholders' meeting, setting out an agreement to sell the first $20,000 at par, the issue of a check in payment for that amount and also upon the fact that the check so issued was never used but subsequently destroyed, thus leaving the bonds unpaid for, except as to the payments admitted in the statement of claim. It was defendants who first set up payment by the transfer of land which raised the question of sufficiency of the consideration for the bonds issued. It thus appears that any variation from the cause of action was introduced by way of defense, and defendants should not complain that the case was tried and their rights determined on the theory advanced by themselves.

This is not a case where defendants can successfully rely upon the theory that plaintiff was a party to the fraud, if any existed, and, consequently, cannot take advantage of its own wrong, or ask to be relieved from the effect of such wrong. The minutes of the meeting showing the sale was carried out as a cash transaction, together with proof that no payment was in fact made, established a prima facie case without relying upon a transaction tending to involve them in a violation of the law. The action, accordingly, falls within the rule which holds that where a party can make out a case without the aid of an illegal transaction, he may be permitted to recover: Wright v. Pipe Line Co., 101 Pa. 204; Sauer v. McKees Rocks School Dist., 243 Pa. 294, 304. Furthermore, as was stated by the court below, the persons actually injured by the transaction and who are interested in the proceedings are the bondholders and creditors of plaintiff, an insolvent corporation.

With respect to the claim for the balance of the purchase price of bonds to the amount of $30,000, there is no denial that the securities were to be paid for at 90 per cent of their par value, the sole question being whether payments made by defendants from time to time were received by plaintiff on account of the bond purchase, or were paid and applied on account of a transaction in which plaintiff company was not interested. George A. Plough, treasurer of plaintiff, was holding office at the pleasure of defendants, acting in their behalf and by virtue of an agreement, whereby he signed papers and transacted other official acts whenever requested so to do by defendants and this without personal investigation. According to his testimony the majority of payments upon which defendants rely as being on account of bonds of plaintiff company, were, in fact, paid and applied on account of claims of another company. In view of Plough's admissions and of the agreement under which he was acting, the value of the receipt as evidence of payment in full was seriously impaired. The jury was instructed that the receipt in full given by plaintiff's treasurer to defendants was prima facie evidence that the bonds had been paid for, but was not conclusive of such payment and that plaintiff had the burden of showing the statements in the receipts were not correct. This plaintiff did by the testimony of the person to whom the payments were made, hence the complaint of defendants that the court failed to instruct the jury in effect that the receipt could be set aside only for fraud, accident or mistake, which must be clearly made to appear, is without force, in view of the circumstances, and in further view of the fact that, at the conclusion of the charge, the trial judge stated that if he had omitted any matter or made misstatements he desired counsel to correct him; in reply to this, counsel for defendants made no request for further instructions as to the effect of the receipt.

The judgment is affirmed.